**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEEE DIVISION**

**MID-SOUTH AG EQUIPMENT, INC.,**

        **Plaintiff,**

**v.**                                        **Case No.** _____

**WACKER NEUSON SALES AMERICAS, LLC,**        **JURY DEMANDED**

        **Defendant.**

## COMPLAINT

COMES NOW the Plaintiff, Mid-South Ag Equipment, Inc., by and through its attorneys of record, and, for its cause of action against Wacker Neuson Sales Americas, LLC would respectfully state and show unto the Court as follows:

### I. Parties

1.    Plaintiff, Mid-South Ag Equipment, Inc. ("Mid-South"), is a corporation organized under the laws of the State of Tennessee, with its principal place of business at 3044 Highway 302, Byhalia, Mississippi. Mid-South is authorized to conduct business in the State of Kentucky and has a business location in Owensboro, Kentucky.

2.    Defendant, Wacker Neuson Sales Americas, LLC, ("Wacker Neuson") is a domestic limited liability company organized under the laws of the State of Wisconsin, with its principal place of business at N92W15000 Anthony Avenue, Menomonee Falls, Wisconsin. The agent for service of process for Defendant is Corporation Service Company, 8040 Excelsior

1

Drive, Suite 400, Madison, Wisconsin. Wacker Neuson is authorized to conduct business in the State of Kentucky; does conduct business in the State of Kentucky; and also maintains a designated registered agent for service of process in the State of Kentucky, to wit: CT Corporation System, 306 W. Main Street, Suite 512, Frankfort, Kentucky 40601. Upon information and belief, Wacker Neuson Corporation is the sole member of Wacker Neuson Sales Americas, LLC. Wacker Neuson Corporation is incorporated under the laws of the State of Wisconsin and has its principle place of business at N92W15000 Anthony Avenue, Menomonee Falls, Wisconsin.

## II. Jurisdiction and Venue

3. This Honorable Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332, based upon diversity of citizenship, and the matter in controversy, exclusive of interest and costs, exceeds $75,000.

4. Venue is proper in this Honorable Court as the Distributor Agreement executed by the parties, a copy of which is attached hereto and marked as **Exhibit A**, requires that any dispute between the parties arising under or related to the Distributor Agreement be filed in the state or federal courts in Milwaukee County or Waukesha County, and that the parties consent to and waive any objection to venue and/or personal jurisdiction in such courts.

## III. Factual Allegations

5. In the fall of 2016, Wacker Neuson approached Mid-South about selling their products through their Owensboro, Kentucky location.

6. Mid-South primarily deals in agriculture equipment and focuses its sales efforts on agricultural customers, such as farmers and fertilizer manufacturers. At the time, Mid-South did not sell construction equipment.

2

7.     On September 27, 2016, David Murphy of Wacker Neuson met with Kent Shaw of Mid-South.  In that meeting, David Murphy attempted to persuade Kent Shaw to agree to purchase for resale construction equipment in addition to agricultural equipment.  David Murphy also attempted to persuade Kent Shaw to purchase for resale certain construction equipment which was dissimilar to the type and size of Ag loaders that Mid-South typically dealt in.  Kent Shaw explained that Mid-South did not operate in the construction industry and that Mid-South did not believe it would be able to sell construction equipment.  Kent Shaw also explained that certain of the construction equipment David Murphy was contemplating was dissimilar to the Ag loaders that Mid-South typically sold and that Mid-South did not believe they would be able to sell that equipment. In an effort to convince Mid-South to expand into construction equipment and to accept the dissimilar equipment, David Murphy promised that Wacker Neuson would either (1) accept a return of the dissimilar construction equipment and issue a refund or (2) facilitate the purchase of the dissimilar construction equipment by a different Wacker Neuson dealer if Mid-South could not sell the dissimilar construction equipment. David Murphy promised that Mid-South would not be financially responsible for any construction equipment that Mid-South could not sell.  In reliance on David Murphy's promise, Mid-South agreed to accept the dissimilar equipment in addition to the agricultural equipment that Mid-South believed it could resell.

8.     Following the September 27, 2016 discussions, Mid-South and Wacker Neuson entered into a written Distributor Agreement on or about October 25, 2016, under the terms of which Mid-South was appointed by Wacker Neuson as an authorized distributor of certain Wacker Neuson products.  See **Exhibit A.**

9.     Pursuant to the Distributor Agreement, Mid-South was assigned by Wacker

Neuson an area of responsibility within which it was authorized to sell Wacker Neuson products. The area of responsibility included Owensboro, Kentucky.

10.     In reliance on the promises of David Murphy, Mid-South agreed to maintain specific construction products and larger wheel loaders as inventory at its Owensboro, Kentucky location. Specifically, Mid-South agreed to inventory 18 wheel-loaders and various attachments (the "Inventory") at a cost of over $900,000.

11.     Mid-South was unable to sell the Inventory and advised Wacker Neuson on multiple occasions that it was not able to sell the Inventory.

12.     Although Wacker Neuson, through David Murphy, represented that Wacker Neuson would either (1) accept a return of the Inventory and issue a refund or (2) facilitate the purchase of the Inventory by a different Wacker Neuson dealer if Mid-South could not sell the Inventory, Wacker Neuson failed to do either.

13.     Instead, Wacker Neuson, through David Murphy, Lloyd Hampton and others, feigned at attempting to resolve the problem for over two years.

14.     On November 18, 2019 Gary Reid of Mid-South informed David Murphy that Mid-South was terminating the Distributor Agreement and demanded that Wacker Neuson repurchase the Inventory.  See **Exhibit B.**

15.     Kentucky Revised Statutes Annotated, § 365.805, provides that "[i]f a retailer enters into a retail agreement contract, written or unwritten, with a supplier where the retailer agrees to maintain an inventory and the contract is terminated, the supplier shall repurchase the inventory as provided in KRS 165.800 to 365.840."

16.     Kentucky Revised Statutes Annotated, § 365.810(1)(a), provides that "[t]he supplier shall repurchase inventory previously purchased from the supplier and held by the

4

retailer on the date of termination of the retail agreement contract. The supplier shall pay one hundred percent (100%) of the net cost, plus any freight charges paid, of all new, unsold, undamaged, and complete farm implements, tractors, farm machinery, utility and industrial equipment, construction and excavating equipment, consumer products, and any attachments for the equipment, and one hundred percent (100%) of the current net price of all new, unused, and undamaged repair parts or superseded parts."

17.     Kentucky Revised Statutes Annotated, § 365.810(2), provides that "[t]he supplier shall pay the retailer five percent (5%) of the current net price on all new unused, and undamaged repair parts or superseded parts to cover the cost of handling, packing, and loading."

18.     Kentucky Revised Statutes Annotated, § 365.810(1)(b), provides that "[the supplier shall repurchase inventory used in demonstrations, including inventory leased or rented primarily for demonstration or lease purposes, at its agreed depreciated value, if the equipment is in like-new condition and has not been damaged."

19.     Kentucky Revised Statutes Annotated, § 365.820(6), provides that "inventory used in demonstrations or leased, as provided in KRS 365.810, shall be considered new and unused."

20.     Kentucky Revised Statutes Annotated, § 365.840, provides that "[t]he provisions of KRS 365.800 to 365.840 shall apply to all retail agreement contracts entered into before June 25, 2013, which have no expiration date and are a continuing contract, and to all other contracts entered into or renewed on or after June 25, 2013."

21.     Kentucky Revised Statutes Annotated, § 365.834, provides that "[t]he provisions of KRS 365.800 to 365.840 shall represent a public policy of this Commonwealth and shall not be waivable in any retail agreement contract, and any attempted waiver shall be void."

22.     At the time of the termination of the Distributor Agreement, Mid-South had an inventory of equipment and parts purchased from Wacker Neuson at a cost of $990,933.43. A true and correct list of said inventory is attached hereto and marked as **Exhibit C**.

23.     Despite the provisions of Kentucky Revised Statutes Annotated, § 365.820(6), that "inventory used in demonstrations or leased, as provided in KRS 365.810, shall be considered new and unused," Wacker Neuson refused to repurchase the inventory without imposing a unilateral deduction of more than $400,000.

24.     Kentucky Revised Statutes Annotated, § 365.825, provides that "[i]f any supplier fails or refuses to repurchase any inventory covered under the provisions of KRS 365.800 to 365.840 within sixty (60) days after shipment to the supplier, the supplier shall be liable in a civil action for one hundred percent (100%) of the current net price of the repair parts and superseded parts inventory, plus five percent (5%) for handling, packing and loading, if applicable, and one hundred percent (100%) of the net cost of all other inventory, plus any freight charges, paid by the retailer, the retailer's reasonable attorney's fees, court costs, and interest on the current net price computed at the legal interest rate from the sixty-first day after shipment."

25.     Mid-South made the initial shipment of the Inventory to Wacker Neuson for repurchase pursuant to Kentucky Revised Statutes Annotated, § 365.825, on June 25, 2020.

26.     Although Wacker Neuson accepted the first shipment of Inventory, it advised Mid-South that it would not repurchase the Inventory at the rates required by the Kentucky Statute and informed Mid-South that it refused to accept any further shipments of Inventory.

27.     Wacker Neuson has refused and continues to refuse to repurchase the Inventory without imposing a unilateral reduction of over $400,000.

## COUNT I
## STATUTORY CLAIMS UNDER KENTUCKY LAW

28.     The allegations set forth in the preceding paragraphs are hereby realleged and incorporated herein by reference as if set forth verbatim.

29.     The Distributor Agreement between Mid-South and Wacker Neuson is a retail agreement contract under Kentucky Revised Statutes, §§ 365.800, et seq.

30.     Wacker Neuson is a supplier pursuant to Kentucky Revised Statutes, § 365.800.

31.     Contrary to the provisions of Kentucky Revised Statutes, § 365.832, Wacker Neuson coerced Mid-South to agree to accept delivery of inventory which Mid-South had not ordered voluntarily.

32.     Contrary to the provisions of Kentucky Revised Statutes, § 365.831, Wacker Neuson substantially changed the competitive circumstances of a retail agreement contract, the Distributor Agreement, without good cause by requiring Mid-South to agree to purchase and maintain inventory that it was unable to sell at the Owensboro location.

33.     As a result of Defendant's actions, Mid-South agreed to maintain an inventory, as that term is defined in Kentucky Revised Statutes, § 365.800, of farm equipment, machinery and parts purchased from Defendant.

34.     Mid-South gave notice to Wacker Neuson terminating the Distributor Agreement.

35.     Mid-South requested that Wacker Neuson repurchase the Inventory that Wacker Neuson required it to purchase.

36.     Wacker Neuson refused to repurchase the Inventory as required by Kentucky Revised Statutes, §§ 365.800 to 365.840, without improperly and unilaterally imposing a deduction of more than $400,000 for inventory used in demonstrations that, by the express

7

provisions of Kentucky Revised Statutes, § 365.820, "shall be considered new and unused."

37.     Mid-South made an initial shipment to Wacker Neuson of inventory to be repurchased on June 25, 2020.

38.     Wacker Neuson accepted the initial shipment but refused to repurchase the Inventory contained in the shipment and stated that it would not accept any additional shipments of Inventory.

39.     As of the date of the filing of this Complaint, Wacker Neuson has refused and continues to refuse to repurchase the Inventory as required by Kentucky Revised Statutes, §§ 365.800 to 365.840 without imposing a unilateral reduction of more than $400,000.

40.     As a proximate result of Defendant's actions and its refusal to comply with Kentucky Revised Statutes, §§ 365.800 to 365.840, Mid-South has been damaged, for which it sues Wacker Neuson for all relief available under said statutes, including but not limited to an award equal to one hundred percent (100%) of the net cost of the Inventory, $986,679.25, plus any freight charges paid by Mid-South; one hundred percent of the current net price of the repair parts and superseded parts inventory, $4,254.18, plus five percent (5%) for handling, packing and loading; reasonable attorney's fees, court costs, and interest on the current net price computed at the legal rate from the sixty-first day after the initial shipment on June 25, 2020, and for such other and further relief, both specific and general, to which Mid-South may be entitled under the premises.

## COUNT II.
## COMMON LAW INTENTIONAL MISREPRESENTATION/FRAUD

47.     The allegations contained in the preceding paragraphs are realleged and incorporated herein by reference as if set forth verbatim.

8

48.     Defendant, in the course of a business transaction in which it had a pecuniary interest, made representations of a material fact to Mid-South for the purpose of inducing Mid-South to purchase the Inventory for its Owensboro, Kentucky location that it did not voluntarily order; that it did not need; and that it had concerns whether it could sell at that location.

49.     The representation of material fact made by David Murphy of Wacker Neuson that, in exchange for the agreement to purchase such Inventory, Wacker Neuson would either (1) accept a return of the Inventory and issue a refund or (2) facilitate the sale of the Inventory to another Wacker Neuson dealer if Mid-South could not sell it, was false and was known by Wacker Neuson to be false at the time it was made.

50.     Mid-South believed the representation was true and justifiably relied upon the representation made by David Murphy of Wacker Neuson.  These representations induced Mid-South to agree to purchase the Inventory.

51.     As a proximate result of such justifiable reliance upon the representation made by Defendant, Mid-South was damaged when Wacker Neuson refused to repurchase the Inventory or facilitate its sale to another dealer, for which Mid-South sues Wacker Neuson for the sum of $990, 933.43 and for such other and further relief, both specific and general, to which Mid-South may be entitled under the premises.

## COUNT III.
## UNJUST ENRICHMENT

52.     The allegations set forth in the preceding paragraphs are hereby realleged and incorporated herein by reference as if set forth verbatim.

53.     The acts of the Defendant, as alleged above, have resulted and will continue to result in its unjust enrichment and have damaged  Mid-South's business and business interests

and, if Wacker Neuson is not required to repurchase Mid-South's inventory, will allow Wacker Neuson to continue to be unjustly enriched, to Mid-South's prejudice and damage, for which Mid-South sues Wacker Neuson for its pecuniary loss in the amount of $990,933.43 and for such other and further relief, both specific and general, to which Mid-South may be entitled under the premises.

 **WHEREFORE, PREMISES CONSIDERED**, Plaintiff respectfully prays as follows:

 1. That process issue and be served on the Defendant and that Defendant be required to answer the Complaint.

 2. That, upon final hearing, this Honorable Court enter judgment in favor of Plaintiff against Defendant in Count I in an amount equal to one hundred percent (100%) of the net cost of its inventory, $986,679.25, plus any freight charges paid by Plaintiff; one hundred percent of the current net price of the repair parts and superseded parts inventory, $4,254.18, plus five percent (5%) for handling, packing and loading; reasonable attorney's fees, court costs, and interest on the current net price computed at the legal rate from the sixty-first day after the initial shipment on June 25, 2020, and for such other and further relief, both specific and general, to which Plaintiff may be entitled under the premises.

 3. That, upon final hearing, this Honorable Court enter judgment in favor of Plaintiff against Defendant in Count II in the amount of $990,933.43 plus punitive damages and for such other and further relief, both specific and general, to which Plaintiff may be entitled under the premises.

 4. That, upon final hearing, this Honorable Court enter judgment in favor of Plaintiff against Defendant in Count III in the amount of $990,933.43 and for such other and further relief, both specific and general, to which Plaintiff may be entitled under the premises.

5.     That Plaintiff be awarded costs and disbursements in this action, including reasonable attorney's fees.

5.     That Plaintiff be awarded pre and post judgment interest on any award of damages.

6.     For such other and further relief, both specific and general, to which Plaintiff may be entitled under the premises.

7.     Plaintiff demands a trial by jury.

Dated this 23rd day of December, 2020.

Respectfully submitted,

**MICHAEL BEST & FRIEDRICH LLP**


By:   *s/ Joseph L. Olson*
        Joseph L. Olson, State Bar No. 1046162
        Marie G. Bahoora, State Bar No. 1092689
        790 N. Water Street, Suite 2500
        Milwaukee, WI 53202
        Tele: 414.271.6560
        Fax:  414.277.0656
        Email: jlolson@michaelbest.com
        Email: mgbahoora@michaelbest.com

Attorneys for Plaintiff Mid-South Ag Equipment, Inc.

216555-0001\29532561.v2