IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEEE DIVISION

MID-SOUTH AG EQUIPMENT, INC.,

    Plaintiff,

v.

WACKER NEUSON SALES AMERICAS, LLC,

    Defendant.

Case No. 20-CV-01899

**JURY DEMANDED**

## AMENDED COMPLAINT

COMES NOW the Plaintiff, Mid-South Ag Equipment, Inc., by and through its attorneys of record, and, for its cause of action against Wacker Neuson Sales Americas, LLC would respectfully state and show unto the Court as follows:

### I. Parties

1. Plaintiff, Mid-South Ag Equipment, Inc. ("Mid-South"), is a corporation organized under the laws of the State of Tennessee, with its principal place of business at 3044 Highway 302, Byhalia, Mississippi. Mid-South is authorized to conduct business in the State of Kentucky and maintains a business location in Owensboro, Kentucky.

2. Defendant, Wacker Neuson Sales Americas, LLC, ("Wacker Neuson") is a domestic limited liability company organized under the laws of the State of Wisconsin, with its principal place of business at N92W15000 Anthony Avenue, Menomonee Falls, Wisconsin. The agent for service of process for Defendant is Corporation Service Company, 8040 Excelsior

1

Drive, Suite 400, Madison, Wisconsin. Wacker Neuson is authorized to conduct business in the State of Kentucky; does conduct business in the State of Kentucky; and also maintains a designated registered agent for service of process in the State of Kentucky, to wit: CT Corporation System, 306 W. Main Street, Suite 512, Frankfort, Kentucky 40601. Upon information and belief, Wacker Neuson Corporation is the sole member of Wacker Neuson Sales Americas, LLC. Wacker Neuson Corporation is incorporated under the laws of the State of Wisconsin and has its principle place of business at N92W15000 Anthony Avenue, Menomonee Falls, Wisconsin.

## II. Jurisdiction and Venue

3. This Honorable Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332, based upon diversity of citizenship, and the matter in controversy, exclusive of interest and costs, exceeds $75,000.

4. Venue is proper in this Honorable Court as the Distributor Agreement executed by the parties, a copy of which is attached hereto and marked as **Exhibit A**, requires that any dispute between the parties arising under or related to the Distributor Agreement be filed in the state or federal courts in Milwaukee County or Waukesha County, and that the parties consent to and waive any objection to venue and/or personal jurisdiction in such courts.

## III. Factual Allegations

5. In the fall of 2016, Wacker Neuson proactively approached Mid-South about selling Wacker Neuson products in the State of Kentucky through Mid-South's Owensboro, Kentucky location.

6. Mid-South primarily deals in agriculture equipment and focuses its sales efforts on agricultural customers, such as farmers and fertilizer manufacturers. At the time, Mid-South

did not sell construction equipment. Mid-South has locations in Mississippi and Kentucky. It has no operations in Wisconsin.

7. On September 27, 2016, David Murphy of Wacker Neuson traveled to Kentucky to meet with Kent Shaw of Mid-South at Mid-South's Owensboro, Kentucky location. In that meeting, David Murphy attempted to persuade Kent Shaw, Hal Johnson and Jeff Eakes (all of Mid-South) to agree to purchase for resale construction equipment in addition to agricultural equipment. David Murphy also attempted to persuade Mid-South to purchase for resale certain equipment which was dissimilar to the type and size of Ag loaders that Mid-South typically dealt in. Kent Shaw explained that Mid-South did not operate in the construction industry and that Mid-South did not believe it would be able to sell construction equipment at its Owensboro, Kentucky location. Kent Shaw also explained that certain of the equipment David Murphy was contemplating was dissimilar to the Ag loaders that Mid-South typically sold and that Mid-South did not believe they would be able to sell that equipment. In an effort to convince Mid-South to expand into construction equipment and to accept the dissimilar Ag equipment, David Murphy promised that Wacker Neuson would either (1) accept a return of the dissimilar Ag and construction equipment ("Inventory") and issue a refund or (2) facilitate the purchase of the Inventory by a different Wacker Neuson dealer if Mid-South could not sell the Inventory. David Murphy promised that Mid-South would not be financially responsible for any of the Inventory that Mid-South could not sell because Wacker Neuson would make good on its promise before any portion of the Inventory that was financed had to be paid off. In reliance on David Murphy's promise, Mid-South agreed to accept the Inventory even though Mid-South did not believe it could resell it.

8. Prior to the September 27, 2016 Owensboro, Kentucky meeting, Mid-South and Wacker Neuson had met to discuss the possibility of Mid-South carrying Wacker Neuson products. None of those meetings occurred in Wisconsin. In fact, no representative of Mid-South ever traveled to Wisconsin for any reason related to the relationship with Wacker Neuson.

9. Following the September 27, 2016 Owensboro, Kentucky discussions, Mid-South and Wacker Neuson entered into a written Distributor Agreement on or about October 25, 2016, under the terms of which Mid-South was appointed by Wacker Neuson as an authorized distributor of certain Wacker Neuson products. See **Exhibit A**.

10. Pursuant to the Distributor Agreement, Mid-South was assigned by Wacker Neuson an area of responsibility within which it was authorized to sell Wacker Neuson products. The area of responsibility included Owensboro, Kentucky and was limited solely to the State of Kentucky.

11. In reliance on the promises of David Murphy, Mid-South agreed to maintain the Inventory at its Owensboro, Kentucky location for the purpose of selling them within Mid-South's defined territory – i.e. the 120 Counties that make up the State of Kentucky. Specifically, Mid-South agreed to inventory 18 wheel-loaders and various attachments at a cost of over $900,000.

12. Much of the Inventory (specifically, the wheel-loaders) never entered Wisconsin. The wheel-loaders were manufactured in Europe, shipped to Pennsylvania and then shipped to Mid-South's Owensboro, Kentucky location.

13. Mid-South was unable to sell the Inventory and advised Wacker Neuson on multiple occasions that it was not able to sell the Inventory, including, but not limited to, email communications on September 19, 2018 and October 8, 2018. See **Exhibit B**.

14. Although Wacker Neuson, through David Murphy, represented that Wacker Neuson would either (1) accept a return of the Inventory and issue a refund, or (2) facilitate the purchase of the Inventory by a different Wacker Neuson dealer if Mid-South could not sell the Inventory within its Territory, Wacker Neuson failed and/or refused to do either.

15. Instead, Wacker Neuson, through David Murphy, Lloyd Hampton and others, feigned at attempting to resolve the problem for over two years while the Inventory continued to sit unused and unsold at Mid-South's Owensboro, Kentucky location.

16. On June 12, 2019 Gary Reid of Mid-South informed Lloyd Hampton of Wacker Neuson that Mid-South was terminating the Distributor Agreement and demanded that Wacker Neuson provide return authorizations on all Wacker Neuson products located at Mid-South's Owensboro, Kentucky location. See **Exhibit C**.

17. After the termination, several additional months passed by where Wacker Neuson failed to resolve the problem and the Inventory continued to sit unused and unsold at Mid-South's Owensboro, Kentucky location.

18. On November 18, 2019 Gary Reid of Mid-South informed David Murphy that Mid-South could no longer continue to wait while Wacker Neuson failed to assist in redistributing the Inventory and again demanded that Wacker Neuson repurchase the Inventory. See **Exhibit D.**

19. Kentucky Revised Statutes Annotated, § 365.805, provides that "[i]f a retailer enters into a retail agreement contract, written or unwritten, with a supplier where the retailer agrees to maintain an inventory and the contract is terminated, the supplier shall repurchase the inventory as provided in KRS §§ 365.800 to 365.840."

20. Kentucky Revised Statutes Annotated, § 365.834, provides that "[t]he provisions of KRS 365.800 to 365.840 shall represent a public policy of this Commonwealth and shall not be waivable in any retail agreement contract, and any attempted waiver shall be void." Accordingly, the choice of law provision favoring Wisconsin law found in the fine print of the Distributor Agreement cannot be applied to avoid the requirements of this fundamental Kentucky public policy.

21. Kentucky Revised Statutes Annotated, § 365.810(1)(a), provides that "[t]he supplier shall repurchase inventory previously purchased from the supplier and held by the retailer on the date of termination of the retail agreement contract. The supplier shall pay one hundred percent (100%) of the net cost, plus any freight charges paid, of all new, unsold, undamaged, and complete farm implements, tractors, farm machinery, utility and industrial equipment, construction and excavating equipment, consumer products, and any attachments for the equipment, and one hundred percent (100%) of the current net price of all new, unused, and undamaged repair parts or superseded parts."

22. Kentucky Revised Statutes Annotated, § 365.810(2), provides that "[t]he supplier shall pay the retailer five percent (5%) of the current net price on all new unused, and undamaged repair parts or superseded parts to cover the cost of handling, packing, and loading."

23. Kentucky Revised Statutes Annotated, § 365.810(1)(b), provides that "[the supplier shall repurchase inventory used in demonstrations, including inventory leased or rented primarily for demonstration or lease purposes, at its agreed depreciated value, if the equipment is in like-new condition and has not been damaged."

24. Kentucky Revised Statutes Annotated, § 365.820(6), provides that "inventory used in demonstrations or leased, as provided in KRS 365.810, shall be considered new and unused."

25. Kentucky Revised Statutes Annotated, § 365.840, provides that "[t]he provisions of KRS 365.800 to 365.840 shall apply to all retail agreement contracts entered into before June 25, 2013, which have no expiration date and are a continuing contract, and to all other contracts entered into or renewed on or after June 25, 2013."

26. At the time of the termination of the Distributor Agreement, the Inventory was new, unused and undamaged within the meaning of the Statute. Other than minor issues (e.g. faded paint and upholstery), that are the direct result of Wacker Neuson failing to live up to its promises and the requirements of Kentucky law, the Inventory remains new, unused and undamaged. At the time of termination, Mid-South had an inventory of equipment and parts purchased from Wacker Neuson at a cost of $990,933.43. A true and correct list of said inventory is attached hereto and marked as **Exhibit E**.

27. Despite the provisions of Kentucky Revised Statutes Annotated, § 365.820(6), that "inventory used in demonstrations or leased, as provided in KRS 365.810, shall be considered new and unused," Wacker Neuson refused to repurchase the Inventory without imposing a unilateral deduction of more than $400,000.

28. Kentucky Revised Statutes Annotated, § 365.825, provides that "[i]f any supplier fails or refuses to repurchase any inventory covered under the provisions of KRS 365.800 to 365.840 within sixty (60) days after shipment to the supplier, the supplier shall be liable in a civil action for one hundred percent (100%) of the current net price of the repair parts and superseded parts inventory, plus five percent (5%) for handling, packing and loading, if applicable, and one

7

hundred percent (100%) of the net cost of all other inventory, plus any freight charges, paid by the retailer, the retailer's reasonable attorney's fees, court costs, and interest on the current net price computed at the legal interest rate from the sixty-first day after shipment."

29. Mid-South made the initial shipment of the Inventory from its Owensboro, Kentucky location to Wacker Neuson for repurchase pursuant to Kentucky Revised Statutes Annotated, § 365.825, on June 25, 2020.

30. Although Wacker Neuson accepted the first shipment of Inventory, it advised Mid-South that it would not repurchase the Inventory at the rates required by the Kentucky Statute and informed Mid-South that it refused to accept any further shipments of Inventory. Accordingly, Wacker Neuson has retained this shipment without making any payment to Mid-South.

31. Wacker Neuson has refused and continues to refuse to repurchase the new, unused and undamaged Inventory without imposing a unilateral reduction of over $400,000. This refusal has caused Mid-South to suffer injuries in the State of Kentucky, the location where the Inventory continues to sit unsold, the location where Mid-South has suffered financial losses, and the State in which Wacker Neuson freely chose to conduct business.

32. Accordingly, Kentucky law applies to all of the claims asserted in this Complaint.

## COUNT I
## STATUTORY CLAIMS UNDER KENTUCKY LAW

33. The allegations set forth in the preceding paragraphs are hereby realleged and incorporated herein by reference as if set forth verbatim.

34. The Distributor Agreement between Mid-South and Wacker Neuson is a retail agreement contract under Kentucky Revised Statutes, §§ 365.800, et seq.

35. Wacker Neuson is a supplier pursuant to Kentucky Revised Statutes, § 365.800.

36. Contrary to the provisions of Kentucky Revised Statutes, § 365.832, Wacker Neuson coerced Mid-South to agree to accept delivery of inventory at its Owensboro, Kentucky location which Mid-South had not ordered voluntarily.

37. Contrary to the provisions of Kentucky Revised Statutes, § 365.831, Wacker Neuson substantially changed the competitive circumstances of a retail agreement contract, the Distributor Agreement, without good cause by requiring Mid-South to agree to purchase and maintain inventory that it was unable to sell at the Owensboro, Kentucky location.

38. As a result of Defendant's actions, Mid-South agreed to maintain at its Owensboro, Kentucky location an inventory, as that term is defined in Kentucky Revised Statutes, § 365.800 ("farm implements, tractors, farm machinery, consumer products, utility and industrial equipment, construction and excavating equipment, and any attachments, repair parts") purchased from Defendant.

39. Mid-South gave written notice to Wacker Neuson terminating the Distributor Agreement.

40. Mid-South requested that Wacker Neuson repurchase the Inventory that Wacker Neuson required it to purchase.

41. Wacker Neuson refused to repurchase the new, unused and undamaged Inventory as required by Kentucky Revised Statutes, §§ 365.800 to 365.840, without improperly and unilaterally imposing a deduction of more than $400,000 for inventory used in demonstrations that, by the express provisions of Kentucky Revised Statutes, § 365.820, "shall be considered new and unused."

42. Mid-South made an initial shipment to Wacker Neuson of inventory to be repurchased on June 25, 2020.

43. Wacker Neuson accepted the initial shipment but refused to repurchase the Inventory contained in the shipment and stated that it would not accept any additional shipments of Inventory, forcing Mid-South to continue maintaining such Inventory at its Owensboro, Kentucky location.

44. As of the date of the filing of this Complaint, Wacker Neuson has refused and continues to refuse to repurchase the new, unused and undamaged Inventory as required by Kentucky Revised Statutes, §§ 365.800 to 365.840 without imposing a unilateral reduction of more than $400,000.

45. As a proximate result of Defendant's actions and its refusal to comply with Kentucky Revised Statutes, §§ 365.800 to 365.840, Mid-South has been damaged, for which it sues Wacker Neuson for all relief available under said statutes, including but not limited to an award equal to one hundred percent (100%) of the net cost of the Inventory, $986,679.25, plus any freight charges paid by Mid-South; one hundred percent (100%) of the current net price of the repair parts and superseded parts inventory, $4,254.18, plus five percent (5%) for handling, packing and loading; reasonable attorney's fees, court costs, and interest on the current net price computed at the legal rate from the sixty-first day after the initial shipment on June 25, 2020, and for such other and further relief, both specific and general, to which Mid-South may be entitled under the premises.

## COUNT II.
## COMMON LAW INTENTIONAL MISREPRESENTATION/FRAUD

46. The allegations contained in the preceding paragraphs are realleged and incorporated herein by reference as if set forth verbatim.

47. Defendant, in the course of a business transaction in which it had a pecuniary interest, made representations of a material fact to Mid-South for the purpose of inducing Mid-South to purchase the Inventory for its Owensboro, Kentucky location that it did not voluntarily order; that it did not need; and that it had concerns whether it could sell at that location.

48. The representation of material fact made by David Murphy of Wacker Neuson, that in exchange for the agreement to purchase and maintain such Inventory at Mid-South's Owensboro, Kentucky location for sale in Kentucky, Wacker Neuson would either (1) accept a return of the Inventory and issue a refund, or (2) facilitate the sale of the Inventory to another Wacker Neuson dealer if Mid-South could not sell it, was false and was known by Wacker Neuson to be false at the time it was made because Wacker Neuson had no intention of carrying out or following through with this promise. The falsity of this statement, the fact that David Murphy knew it was false when he made it, and the fact that Wacker Neuson had no intention of living up to its promise is borne out by Wacker Neuson's refusal to honor its promise for 2 years after Mid-South first asked them to honor it.

49. Mid-South believed the representation was true and justifiably relied upon the representation made by David Murphy of Wacker Neuson at the September 27, 2016 meeting held in Kentucky. These representations induced Mid-South to agree to purchase the Inventory and maintain the Inventory at its Owensboro, Kentucky location for the purpose of sale within the State of Kentucky.

11

50. Under Kentucky law, the presence of a merger and integration clause in a contract does not foreclose a party's ability to assert a fraud in the inducement claim based upon representations made prior to the execution of a contract. *See RadioShack Corp. v. Comsmart, Inc.*, 222 S.W.3d 256, 260-61 (Ky. Ct. App. 2007).[1]

51. As a proximate result of such justifiable reliance upon the representation made by Defendant, Mid-South was damaged when Wacker Neuson refused to repurchase the Inventory or facilitate its sale to another dealer, for which Mid-South sues Wacker Neuson for the sum of $990, 933.43 and for such other and further relief, both specific and general, to which Mid-South may be entitled under the premises.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff respectfully prays as follows:

1. That process issue and be served on the Defendant and that Defendant be required to answer the Complaint.

2. That, upon final hearing, this Honorable Court enter judgment in favor of Plaintiff against Defendant in Count I in an amount equal to one hundred percent (100%) of the net cost of its inventory, $986,679.25, plus any freight charges paid by Plaintiff; one hundred percent of the current net price of the repair parts and superseded parts inventory, $4,254.18, plus five percent (5%) for handling, packing and loading; reasonable attorney's fees, court costs, and interest on the current net price computed at the legal rate from the sixty-first day after the initial shipment on June 25, 2020, and for such other and further relief, both specific and general, to which Plaintiff may be entitled under the premises.

---

[1] Mid-South asserts these claims under Kentucky law. However, even if the Court determines Wisconsin law applies to Mid-South's fraud claim, the Distributor Agreement's integration clause still does not foreclose Mid-South's ability to assert a fraud in the inducement claim here. *See Leasing Servs., LLC v. I.A.M. Nat'l Pension Fund*, 2011 U.S. Dist. LEXIS 44531, at *7-8 (E.D. Wis. Apr. 18, 2011) ("Wisconsin does not allow integration clauses or clauses barring liability for false representations to preclude defense or assertions of fraud in the inducement.").

3. That, upon final hearing, this Honorable Court enter judgment in favor of Plaintiff against Defendant in Count II in the amount of $990,933.43 plus punitive damages and for such other and further relief, both specific and general, to which Plaintiff may be entitled under the premises.

4. That Plaintiff be awarded costs and disbursements in this action, including reasonable attorney's fees.

5. That Plaintiff be awarded pre and post judgment interest on any award of damages.

6. For such other and further relief, both specific and general, to which Plaintiff may be entitled under the premises.

7. Plaintiff demands a trial by jury.

Dated this 10th day of March, 2021.

Respectfully submitted,

**MICHAEL BEST & FRIEDRICH LLP**

By: _s/ Joseph L. Olson_
Joseph L. Olson, State Bar No. 1046162
Marie G. Bahoora, State Bar No. 1092689
Peter T. Sandvick, State Bar No. 1114549
790 N. Water Street, Suite 2500
Milwaukee, WI 53202
Tele: 414.271.6560
Fax: 414.277.0656
Email: jlolson@michaelbest.com
Email: mgbahoora@michaelbest.com
Email: ptsandvick@michaelbest.com

Attorneys for Plaintiff Mid-South Ag Equipment, Inc.