# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**MID-SOUTH AG EQUIPMENT, INC,**

             **Plaintiff,**

    **v.**                                **Case No. 20-CV-1899**

**WACKER NEUSON AMERICA CORPORATION,**

             **Defendant.**

## DECISION AND ORDER

**1. Procedural History**

Plaintiff Mid-South AG Equipment, Inc., filed a complaint in this court on December 23, 2020, alleging statutory claims under Kentucky law, common law intentional misrepresentation/fraud, and unjust enrichment against defendant Wacker Neuson America Corporation. (ECF No. 1.) On February 17, 2021, Wacker moved to dismiss the complaint. (ECF No. 13.) Rather than responding to that motion, Mid-South filed an amended complaint that deleted its unjust enrichment claim and amended its other allegations. (ECF No. 16.) Wacker, in turn, moved to dismiss the common law intentional misrepresentation/fraud claim in the amended complaint. (ECF No. 20.) Wacker's motion to dismiss is ready for resolution.

All parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). (*See* ECF Nos. 9, 11.) The court has jurisdiction under 28 U.S.C. § 1332.

**2. Facts**

The following allegations, which the court accepts as true for the purposes to the pending motion, are taken from Mid-South's amended complaint.

Wacker, a Wisconsin limited liability company, sells construction equipment. (ECF No. 16, ¶¶ 2, 7.) Mid-South primarily sells agricultural equipment in Mississippi and Kentucky. (ECF No. 16, ¶ 6.)

On September 27, 2016, David Murphy, a representative of Wacker, traveled to Kentucky and attempted to persuade representatives of Mid-South to purchase for resale Wacker construction and agricultural equipment. (ECF No. 16, ¶ 7.) Mid-South stated that it "did not believe it would be able to sell construction equipment at its Owensboro, Kentucky location." (ECF No. 16, ¶ 7.) Mid-South also stated that it did not believe it would be able to sell some of the equipment because it was unlike its typical inventory. (ECF No. 16, ¶ 7.) To convince Mid-South to buy the Wacker equipment, Murphy orally promised Mid-South that, if it could not sell the equipment, Wacker would either (1) accept a return of and issue a refund for the equipment, or (2) facilitate a purchase of the equipment by a different Wacker dealer. (ECF No. 16, ¶ 7.)

Mid-South and Wacker entered into a written Distributor Agreement on or about October 25, 2016, under which Mid-South was authorized to sell Wacker products in Kentucky. (ECF No. 16, ¶¶ 9-10.)

Mid-South was unable to sell the equipment and so advised Wacker. (ECF No. 16, ¶ 13.) Wacker failed or refused to either issue a refund for the equipment or facilitate the purchase of the equipment by a different Wacker dealer. (ECF No. 16, ¶ 14.) Instead, Wacker "feigned at attempting to resolve the problem for over two years" while the equipment was at Mid-South's premises. (ECF No. 16, ¶ 15.) On June 12, 2019, Mid-South informed Wacker it was terminating the Distributor Agreement. (ECF No. 16, ¶ 16.) On November 18, 2019, Mid-South demanded Wacker repurchase the equipment. (ECF No. 16, ¶ 18.)

At the time of the termination of the Distributor Agreement, the equipment was new, unused, and undamaged. (ECF No. 16, ¶ 26.) Nonetheless, Wacker refused to repurchase the equipment without deducting more than $400,000 of the $990,933.43 original price. (ECF No. 16, ¶¶ 26-27.)

Although Wacker accepted a shipment of equipment from Mid-South, it advised Mid-South it would not repurchase the equipment "at the rates required by the Kentucky statute" and refused to accept any further shipments of equipment. (ECF No. 16, ¶ 30.) The remaining equipment is still at Mid-South's premises. (ECF No. 16, ¶ 31.)

### 3. Motion to Dismiss Standard

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint that offers mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). The court accepts "all well-pleaded facts as true and constru[es] all inferences in favor of the plaintiffs." *Gruber v. Creditors' Prot. Serv.*, 742 F.3d 271, 274 (7th Cir. 2014).

### 4. Analysis

Because this action is before this court based on the diversity of the parties, ordinarily the first task for the court is to determine which state's law to apply. Wacker contends that "[t]he Court need not undergo a choice-of-law analysis because the result is the same under both Wisconsin and Kentucky law." (ECF No. 21 at 5.) Mid-South states in a footnote in its amended complaint that it asserts the common law intentional misrepresentation/fraud claim under Kentucky law. (ECF No. 16 at 12.)

In assessing which state law will govern a dispute a federal court applies the choice of law rules of the state in which it sits. *Crescent Elec. Supply Co. v. Coates Elec. LLC*, No. 18-CV-1920-JPS, 2019 U.S. Dist. LEXIS 86969, at *4 (E.D. Wis. May 23, 2019). Wisconsin applies different methodologies to tort and contract disputes. *Id.* (citing *Glaeske v. Shaw*, 2003 WI App 71, 261 Wis. 2d 549, 661 N.W.2d 420, 427 (Wis. Ct. App. 2003)). Although a contract underlies this action, Mid-South's relevant claim sounds in tort; it does not assert a breach of contract claim.

Notwithstanding Wacker's assertion that the outcome is the same under either Wisconsin or Kentucky law, *cf. Glaeske v. Shaw*, 2003 WI App 71, ¶21, 261 Wis. 2d 549, 562, 661 N.W.2d 420, 427 ("The first step in a choice of law analysis is to determine whether the choice of one law over another will affect the outcome."), the court presumes that the choice is not without consequence and thus undertakes the analysis. With respect to tort cases, the court "begins with a presumption that the law of the forum applies unless nonforum contacts are of the greater significance …." *Glaeske*, 2003 WI App 71, ¶22 (internal quotation marks omitted).

The non-forum contacts, *i.e.*, the contacts with Kentucky, are of greater significance. Wacker's representative allegedly traveled to Kentucky to meet with representatives of Mid-South to discuss the prospect of Mid-South selling Wacker's products in Kentucky. The alleged misrepresentation that forms the basis for Mid-South's claim was allegedly made in Kentucky. None of the additional factors, *see State Farm Mut.*

5

*Auto. Ins. Co. v. Gillette*, 2002 WI 31, 251 Wis. 2d 561, 588-94, 641 N.W.2d 662, 676-79, are sufficient to tip the balance in favor of the application of Wisconsin law. Therefore, Kentucky law applies to Mid-South's claim.

**4.1 Promise to Perform**

"Where an individual is induced to enter into the contract in reliance upon false representations, the person may maintain an action for a rescission of the contract, or may affirm the contract and maintain an action for damages suffered on account of the fraud and deceit." *Radioshack Corp. v. Comsmart, Inc.*, 222 S.W.3d 256, 261 (Ky. Ct. App. 2007). Because such a claim arises in tort rather than contract, the parol evidence rule does not bar the introduction of such alleged statements, notwithstanding even a merger or integration clause in the contract. *Id*.

But promises as to future actions are generally not actionable as fraud. Rather, "[f]or a declarant's misrepresentation to be used as the basis for fraud, it must relate to an existing or past fact." *Id.* at 262. An exception to this rule applies if the defendant induced the plaintiff to enter a contract by making representations as to its future intentions that it had no intention of carrying out. *Major v. Christian Cty. Livestock Mkt., Inc.*, 300 S.W.2d 246, 249 (Ky. 1957).

Wacker argues that the alleged misrepresentation—that Wacker would either repurchase or facilitate the sale of any equipment Mid-South could not sell—relates to a future promise and cannot provide the basis for a fraud claim. (ECF No. 21 at 5-6.) The

6

amended complaint, however, alleges that Murphy knew at the time the representation was made that Wacker had no intention of carrying the representation out. (ECF No. 16, ¶ 48.) In support of this allegation, the amended complaint notes that Wacker refused to honor its promise. (ECF No. 16, ¶ 48.)

Wacker contends this is simply an allegation of non-performance; the fact that Wacker did not perform cannot, by itself, support the inference that it did not intend to perform at the time the promise was made lest the exception swallow the rule. (ECF No. 21 at 7.) Mid-South asserts that it cannot be more specific because it has not yet had the benefit of discovery. (ECF No. 24 at 8-9.) But as Wacker correctly notes in reply, a plaintiff is not entitled to discovery to be able to state a claim; a plaintiff must state a claim to be entitled to discovery. (ECF No. 25 at 3 (citing *Iqbal*, 556 U.S. at 678-79).)

At the motion to dismiss stage the court considers not only what the plaintiff has explicitly alleged in its complaint but also reasonable inferences that may be drawn from those allegations to assess whether the plaintiff has alleged a plausible claim. *See Doe v. Holcomb*, 883 F.3d 971, 975 (7th Cir. 2018).

Within one month of Murphy allegedly promising Mid-South that Wacker would buy back (or facilitate the transfer of) any unsold products, Mid-South and Wacker entered into a Distributor Agreement that disavowed any such promise and stated that Wacker merely had the option to buy back its unsold products. The Distributor Agreement appears to be a standardized form contract, and Murphy, as Wacker's

representative, presumably was familiar with its contents. Against this backdrop a reasonable inference is that Murphy knew when he allegedly made the relevant assurances to Mid-South that Wacker had no intention of honoring such a promise.

Therefore, dismissal is not appropriate on the basis that the alleged promise related to future actions.

**4.2 Reasonable Reliance**

Although an integration clause does not foreclose a claim of misrepresentation, the existence of an integration clause is a factor in whether the plaintiff's reliance was reasonable. *Radioshack*, 222 S.W.3d at 262. In Wacker's view, Mid-South could not have reasonably relied on Murphy's alleged promise because it was expressly contradicted by the terms of the Agreement. Specifically, the Agreement states, "[t]his agreement… and any consignment agreement between the parties … constitute the entire agreement between the parties[.]" (ECF No. 16-1, ¶ 18.) Further, it states that "all prior agreements, correspondence, discussions, negotiations and understandings of the parties are merged herein and made a part hereof." (ECF No. 16-1, ¶ 18.) The Agreement also addresses the "consequences" of termination of the Agreement. Specifically, it states that, upon termination, "Wacker Neuson may … at its option … purchase (or cause any successor to Distributor to purchase) … Distributor's then existing inventory of the Products for an amount equal to Distributor's delivered cost of such inventory[.]" (ECF No. 16-1, ¶ 13.) "[I]f Wacker Neuson or a Wacker Neuson affiliate does not elect to purchase (or cause

any successor to Distributor to purchase) such inventory, Distributor may continue to distribute the same in the ordinary course of business … until Distributor's supply of the Products is exhausted…." (*Id*.)

"[W]hether reliance is justified (or as sometimes stated, reasonable) is a question of fact in all but the rarest of instances." *Yung v. Thornton*, 563 S.W.3d 22, 47 (Ky. 2018) (citing *IAS Service Group, L.L.C. v. Jim Buckley & Associates, Inc.*, 900 F.3d 640, 649 (5th Cir. 2018) (the issue of justifiable reliance is generally a question of fact); *PharMerica Chicago, Inc. v. Meisels*, 772 F. Supp. 2d 938, 957-961 (N.D. Ill. 2011) (justifiable reliance is a question of fact but can be determined as a matter of law "when no trier of fact could find that it was reasonable to rely on the alleged statements or when only one conclusion can be drawn"); *McColgan v. Mutual of Omaha Insurance Co.*, 4 F. Supp. 3d 1228, 1230-34 (E.D. Cal. 2014) (justifiable reliance is a fact question, "except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion")).

Mid-South argues that Murphy's alleged promise "merely supplements" the provision regarding Wacker's options following termination of the Agreement. (ECF No. 24 at 11.) It argues, "A reasonable juror could find that Mid-South justifiably relied upon Wacker Neuson's representation and believed that the contractual language was consistent with Wacker Neuson's representation – particularly because Wacker Neuson's representation can be plausibly interpreted as a promise to affirmatively exercise its 'discretion' in repurchasing the inventory." (ECF No. 24 at 11.)

9

A promise to do something and discretion to do something are mutually exclusive. The Agreement clearly states that upon termination of the Agreement Wacker has the option to buy back or facilitate the sale of Mid-South's unsold inventory of Wacker products. Such an option is inconsistent with Murphy's alleged promise. Moreover, in setting forth Mid-South's right to continue to sell Wacker products if Wacker does not repurchase them or arrange their sale, the Agreement is clear that Mid-South might be stuck with Wacker products after the termination of the Agreement.

Because the Agreement is clear and unambiguous that Wacker was not required to repurchase or facilitate the sale of unsold inventory following the termination of the Agreement, this is the rare case where the court must conclude that no reasonable finder of fact could conclude that Mid-South's reliance on Murphy's allege promise was reasonable. *See Davis v. Siemens Med. Sols. USA, Inc.*, No. 3:04CV-195-MO, 2007 U.S. Dist. LEXIS 15904, at *20 (W.D. Ky. Mar. 6, 2007) (setting aside jury verdict because no reasonable finder of fact could conclude that salesman's reliance on promise of additional compensation was reasonable when compensation scheme was clearly set forth in the contract). Accordingly, Mid-South has failed to state a claim for fraud that is plausible on its face. Wacker's motion to dismiss will be granted.

Because Mid-South could not have justifiably relied on Murphy's alleged oral promise, it is unnecessary for the court consider whether the economic loss doctrine provides an alternative basis for dismissing Mid-South's fraud claim.

**IT IS THEREFORE ORDERED** that Defendant Wacker's motion to dismiss the original complaint (ECF No. 13) is **dismissed as moot**.

**IT IS FURTHER ORDERED** that Defendant Wacker's motion to dismiss Count Two of the amended complaint (ECF No. 20) is **granted.**

Dated at Milwaukee, Wisconsin this 8th day of July, 2021.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge